1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9    AARON L. COOPER,

10            Plaintiff,                      No. CIV S-05-1043 GEB JFM P

11        vs.

12   CAL TERHUNE, et al.,

13            Defendants.              <u>FINDINGS & RECOMMENDATIONS</u>

14   _____/

15            Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

16   42 U.S.C. § 1983.  This action is proceeding on plaintiff's claim that defendants DeLong and

17   Armstrong violated plaintiff's rights under the Eighth Amendment by subjecting him to

18   excessive force.  (<u>See</u> Order filed September 13, 2005.)[1]  This matter is before the court on

19   defendants' motion for summary judgment.

20            SUMMARY JUDGMENT STANDARDS UNDER RULE 56

21            Summary judgment is appropriate when it is demonstrated that there exists "no

22   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

23   matter of law."  Fed. R. Civ. P. 56(c).

24   _____

25        [1] After numerous attempts, plaintiff was unable to locate defendant T.H. Campbell for
     purposes of service of process and defendant Campbell was dismissed by the district court on
26   September 12, 2007.

> Under summary judgment practice, the moving party always bears
> the initial responsibility of informing the district court of the basis
> for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

whatever is before the district court demonstrates that the standard for entry of summary

judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

        If the moving party meets its initial responsibility, the burden then shifts to the

opposing party to establish that a genuine issue as to any material fact actually does exist.  See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

establish the existence of this factual dispute, the opposing party may not rely upon the

allegations or denials of its pleadings but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material, in support of its contention that the

dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

1  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

2  1436 (9th Cir. 1987).

3            In the endeavor to establish the existence of a factual dispute, the opposing party

4  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

5  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

6  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

7  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

8  genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

9  committee's note on 1963 amendments).

10           In resolving the summary judgment motion, the court examines the pleadings,

11 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

12 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

13 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

14 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

15 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

16 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

17 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

18 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

19 show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

20 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

21 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

22           On October 24, 2005, the court advised plaintiff of the requirements for opposing

23 a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

24 F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and Klingele v.

25 Eikenberry, 849 F.2d 409 (9th Cir. 1988).

26 /////

ANALYSIS

I. Facts

    A.  Undisputed Facts[2]

       At all times relevant to this action, plaintiff was incarcerated in the D-yard building at High Desert State Prison in Susanville, California (High Desert), and defendants were employed as correctional staff at High Desert.

       On the morning of November 22, 1999, a stabbing incident involving three white inmates occurred in D-yard.  The incident occurred shortly after plaintiff entered D-yard.  At the time, there were approximately one hundred twenty inmates on the yard, three correctional officers on the yard, and four correctional officers in nearby towers observing the yard.  The inmates were given orders over the loudspeakers to "get down."  (Defendants' Statement of Undisputed Facts, at ¶ 5.)  All inmates, including plaintiff, complied with that order by sitting down.  Plaintiff sat with a group of three other black inmates.  Plaintiff's group was within a group of seventy or eighty black inmates who "self-segregate" on the yard.  (Id.)

       At approximately 9:30 a.m., defendant Delong responded to a call on the yard, pursuant to which he was told that two white inmates had slashed and stabbed another white inmate.  Defendant Delong and several other correctional officers who responded to the incident began strip searching inmates, starting with white and Hispanic inmates.  Inmates were sent back to their building after the searches were completed.

       After the correctional officers searched all of the white and Hispanic inmates, they approached the black inmates.  Only a few of the black inmates complied with the orders to be searched.  At the conclusion of those searches, approximately sixty or seventy black inmates and ten correctional officers remained on the yard.

---

    [2]  Unless otherwise noted, the statement of undisputed facts is taken from Defendants' Separate Statement of Undisputed Facts in Support of Motion for Summary Judgment, filed August 18, 2006.

1      A correctional sergeant tried to talk to members of the Mens' Advisory

2  Committee and other inmates in an effort to gain the compliance of the remaining black inmates.

3  His efforts were unsuccessful.  Plaintiff and other inmates began to make comments expressing

4  their unhappiness about the officers' actions, and "further unrest began among the inmates."  (Id.

5  at ¶ 11; see also Pl.'s Depo. at 74-75; 83.)

6      In response to plaintiff's comments, the correctional sergeant ordered another

7  officer to put plaintiff in handcuffs.  Plaintiff stood up but he did not comply with the order to

8  submit to handcuffs, and he told the officers he refused to comply with all orders.  Plaintiff

9  wanted the correctional sergeant to approach plaintiff, order him to comply, and then spray him

10  with mace when he refused.  The correctional sergeant approached plaintiff with four other

11  officers.  As they approached plaintiff, other inmates began to stand.  The officers ordered the

12  other inmates to get down.  The correctional sergeant ordered plaintiff to turn around and go to

13  the wall.  Plaintiff refused.  The correctional sergeant grabbed plaintiff's neck.  Plaintiff

14  responded by swinging his fists at the correctional sergeant, hitting him with his right closed fist.

15  After plaintiff hit the correctional sergeant the other officers "immediately" used force on

16  plaintiff.  (Id. at 17.)  An altercation then began between the officers and approximately twenty

17  other inmates.  The altercation lasted approximately a minute.  During that time, there was a

18  physical altercation between plaintiff and defendant Delong.  Plaintiff was alternately blocking

19  blows and swinging.  (Pl.'s Depo. at 108.)  Eventually plaintiff got down on the ground because

20  another inmate told him to do so.  The correctional sergeant sustained serious injuries during the

21  altercation, and defendant Delong was injured also.

22      At approximately 10:30 a.m., defendant Armstrong responded to a request for a

23  response on D-yard.  When he arrived, defendant Armstrong was instructed, along with another

24  officer, to escort plaintiff to the medical office.  Plaintiff was handcuffed.  During the escort, they

25  encountered four inmates near the sallyport who were not handcuffed.  Various orders to get

26  /////

5

1  down were given.  (Pl.'s Depo. at 125; Armstrong Decl. at 2-3.)  Plaintiff did not get down.

2  Defendant Armstrong used force against plaintiff for a period of 15 to 30 seconds.

3        B.  <u>Excessive Force</u>

4            1.  <u>Legal Standards</u>

5            The United States Supreme Court has held that the question of whether the force

6  used by a correctional officer against a prisoner amounts to an Eighth Amendment violation

7  "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore

8  discipline or maliciously and sadistically for the very purpose of causing harm.'"  <u>Whitley v.</u>

9  <u>Albers</u>, 475 U.S. 312, 320-21 (1986) (<u>quoting</u> <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir.

10  1973), <u>cert</u>. <u>denied</u>, 414 U.S. 1033 (1973)).  Several factors are considered in reviewing a claim

11  of excessive force, including the amount of force used, whether the force was reasonable and

12  justified under the circumstances, the extent of the injury inflicted, the extent of threat to the

13  safety of staff and inmates and whether efforts were made to temper the severity of a forceful

14  response.  <u>Id</u>. at 321.

15                Under the <u>Whitley</u> approach, the extent of injury suffered by an
              inmate is one factor that may suggest "whether the use of force

16                could plausibly have been thought necessary" in a particular
              situation, "or instead evinced such wantonness with respect to the

17                unjustified infliction of harm as is tantamount to a knowing
              willingness that it occur." 475 U.S., at 321.  In determining

18                whether the use of force was wanton and unnecessary, it may also
              be proper to evaluate the need for application of force, the

19                relationship between that need and the amount of force used, the
              threat "reasonably perceived by the responsible officials," and "any

20                efforts made to temper the severity of a forceful response." <u>Ibid</u>.
              The absence of serious injury is therefore relevant to the Eighth

21                Amendment inquiry, but does not end it.

22  <u>Hudson v. McMillian</u>, 503 U.S. 1, 7-8 (9th Cir. 1992).  The appropriateness of the use of force

23  must be determined by the facts and circumstances of each case.  <u>See</u> <u>Michenfelder v. Sumner</u>,

24  860 F.2d 328, 336 (9th Cir. 1988).  In <u>Whitley</u>, prison officials shot plaintiff prisoner in the legs

25  during the quelling of a riot.  <u>Id</u>. at 1082.  In analyzing the prison official's actions under the

26  Eighth Amendment, the Supreme Court held that this shooting, given the circumstances of the

1  prison officials' efforts to restore prison security during a riot, did not violate the prisoner's rights.

2  Id. at 1087.

3            1.  Defendant Delong

4            In the instant case, the actions of defendant Delong were not as violent as those

5  taken by the prison officials in Whitley.  Here, it is undisputed that plaintiff refused to comply

6  with prison officials' orders on several occasions.  By his own account, plaintiff challenged the

7  officer's demand to submit to a strip search, opting instead to participate in a "sit-in."  Plaintiff

8  admits he subsequently refused to comply with the correctional sergeant's order to cuff up.

9  Although plaintiff maintains that the correctional sergeant failed to follow appropriate procedure

10  in that situation, plaintiff admits that he responded to the correctional sergeant's placement of his

11  hand on plaintiff's throat by swinging his closed fist at the correctional sergeant, and that the

12  sergeant "staggered back" from the blow.

13            The parties disagree on the proper word to describe plaintiff's subsequent actions

14  (plaintiff argues he was defending himself; defendants claim plaintiff was an active participant),

15  but here it is a distinction without a difference.  Plaintiff admits striking the correctional sergeant,

16  after which other prison guards intervened with their batons to restore order.  Other black

17  inmates had stood up during plaintiff's refusal to cuff-up and while the number of prison guards

18  had increased to 14, they were still largely outnumbered by the 60 to 70 inmates who refused to

19  strip out, posing a threat to the safety of both prison staff and inmates.

20            Once the altercation between plaintiff and the correctional sergeant began, other

21  inmates joined in, and inmate Watts was immediately taken down.  Plaintiff states he was being

22  hit with batons, and was alternately moving around, using his arms to block blows and swinging

23  with his fists.  He admitted striking Delong once with his fist.  Delong hit him three times with

24  the baton, one of which struck plaintiff's head.  Plaintiff concedes that there were other combats

25  going on in the area and estimated about 20 inmates were fighting.  (Pl.'s Depo. at 111.)

26  /////

1          Plaintiff also contends defendant Delong struck plaintiff first and Delong insists

2  plaintiff struck Delong first, but that difference of opinion is not material here, either.  A

3  reasonable jury would infer from the fact that plaintiff struck the correctional sergeant, and then

4  alternately moved around, using his arms to block blows and swinging with his fists, that

5  defendant Delong's decision to use force was objectively reasonable.  This is further bolstered by

6  the fact that plaintiff was the last inmate to get down:

7                A. . . . everybody else had stopped and [inmate] Watts was like,
                  man, just get down, just get down.

8

9                Q.  What do you mean everybody else had stopped, the other inmates?

10             A.  Yeah.  Everybody else had been – complied.  Either taken
             down or had got down, because during the incident, that's all you
             have, "Get down," "Get down", "Get down".  Officer screaming,

11            "Get down", "Get down",  "Get down", "Get down".  So you're
             constantly hearing that as it's going on.  And – and me, I'm just

12            constantly in a defensive rotation and looking to block something,
             and I'm just constantly doing that, and then my friend Watts say,

13            man, go on and get down, get down, and then I just go on and get
             down and comply myself.

14

15  (Pl.'s Depo. at 114.)  Although plaintiff maintains he was simply engaging in a sit-in, an act of

16  civil disobedience, the undisputed facts paint a different picture.  A large group of inmates were

17  refusing to comply with the correctional sergeant's direct orders, and the sergeant's efforts to

18  negotiate a different outcome were rebuffed.  The inmates began to demonstrate unrest by their

19  verbal remarks, which intensified when plaintiff stood up and refused the order to cuff-up, and

20  other inmates began to stand.  Given that prison staff were largely outnumbered, and defendant

21  Delong witnessed plaintiff strike the correctional sergeant with clenched fist, defendant Delong

22  must have reasonably believed his safety as well as other officers' safety were at risk.

23          The nature and extent of plaintiff's injuries, documented by medical records

24  appended to his complaint, also demonstrate that the force exerted was reasonable.  Plaintiff

25  sustained a 3/8 inch laceration to his scalp, which required five staples, and other bruises from

26  the baton, and claims he suffers headaches as a result.  (Complaint, Ex. B.)  Plaintiff argues that

the force used was not lethal only because defendant did not have a lethal weapon handy at the time.  However, he conceded that an inmate may get shot in the yard if he does not comply with the order to get down.  (Pl.'s Depo. at 40.)  He confirmed that he did not get pepper-sprayed, or tasered, or shot with non-lethal rubber bullets or wooden blocks.  (Pl.'s Depo. at 113.)  The force used by defendant Delong was not lethal and did not inflict serious or life-threatening injuries on plaintiff.

Moreover, neither defendant Delong's actions nor plaintiff's resulting injuries demonstrate that Delong acted maliciously and sadistically for the very purpose of causing harm. See Wilson v. Seiter, 501 U.S. 294, 302 (1991); Robins v. Meecham, 60 F.3d 1436, 1440 (9th Cir. 1995).  Plaintiff conceded that he only got down when another inmate told him to.  (Pl.'s Depo. at 114.)  Because the undisputed facts demonstrate the existence of an emergency, this court finds that the force used by defendant Delong was applied in a good faith effort to restore order.

Given the existence of an emergency, defendant's use of the baton to strike plaintiff three times, twice on the arm and once on the head, was a reasonable amount of force under the circumstances.  Prison staff was outnumbered and had to act quickly to restore order. Delong refrained from using lethal force to stop plaintiff.

For these reasons, this court will recommend that summary judgment be granted for defendant Delong on plaintiff's Eighth Amendment claim.

2.  Defendant Armstrong

The actions of defendant Armstrong present a closer question.  Here, plaintiff avers that the earlier altercation was over, he was handcuffed behind his back, the four inmates near the sallyport did comply with orders to get down, and that CDC procedures states that "when an inmate is already handcuffed and under escort, [he] is not to be taken down."  (Opp'n. /////

at 3.)[3]  Plaintiff insists he was not personally ordered to get down, although he concedes in his

deposition that get down orders were issued.  (Pl.'s Depo. at 125.)  Plaintiff contends that

defendant Armstrong "slammed" plaintiff to the ground, face down, and that it exacerbated the

bruises and pain he sustained during the earlier altercation, and contributed to the headaches he

continues to suffer to date.

Moreover, plaintiff was escorted by defendant Armstrong and Officer Abney, and

shortly after stopping their escort, two unidentified staff members came out of the patio area.

This changed the nature of the confrontation in the sense that staff was not largely outnumbered

by non-handcuffed inmates as they were previously.  Defendant Armstrong avers that plaintiff

was resistive during the escort and that the four inmates by the sallyport were noncompliant,

failing to comply with orders to roll over onto their stomachs to be handcuffed.  (Armstrong

Decl. at 2.)  Plaintiff contends he was compliant during the escort and that the four inmates

complied with Armstrong's order to "scoot over" as well as orders to get down.  (Pl.'s Depo. at

120.)

It is undisputed that plaintiff was handcuffed and escorted by two prison staff at

the time the force was exerted.  A reasonable jury could find that the use of force was objectively

unreasonable given that plaintiff was under control at the time.  Plaintiff has identified material

disputes of fact concerning whether he was resisting defendant Armstrong, whether the four

inmates near the sallyport were noncompliant sufficient to warrant the use of force against a

handcuffed inmate under escort by two prison staff, and whether defendant Armstrong

"slammed" plaintiff to the ground.  These material disputes of fact also preclude the grant of

qualified immunity.  Defendant Armstrong's motion for summary judgment should be denied.

IT IS HEREBY RECOMMENDED that defendants' November 13, 2007 motion

for summary judgment be granted in part and denied in part, as follows:

---

[3]  Plaintiff did not provide a copy of the procedure, noting the procedure will come
known at trial.  (Opp'n. at 3.)

1.  Defendants' motion for summary judgment as to plaintiff's claim that defendant Delong used excessive force on plaintiff be granted.

2.  Defendants' motion for summary judgment as to plaintiff's claim that defendant Armstrong used excessive force on plaintiff be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 7, 2008.

UNITED STATES MAGISTRATE JUDGE

/001; coop1043.57

11